LEVI N. BLYDENBURGH vs. GEORGE W. MILES AND OTHERS.

The act of 1868 imposes a penalty of $100 for permitting "any refuse from the manufacture of gas, or of oil from white-fish, or other deleterious substances to fish" to flow into any of the waters of the state, half the penalty to go to the person prosecuting, and half to the town. The act of 1872 extended the provisions of this act to establishments for manufacturing oil or manure from fish, bones or carcasses of animals, and provided that it should be a violation of the act to permit "any of the liquids or materials used or produced in such establishments" to flow into the waters of the state, that the penalty might be recovered for every day that the act was violated, and that any

Blydenburgh *v.* Miles.

person might in his own name sue for and collect the penalty. In an action on the statute, brought by an individual in his own name alone, the declaration alleging in two counts that the defendants manufactured oil from white-fish, and manure from fish, in the town of Milford, and permitted the "refuse" from their establishment to flow into Milford harbor, and in a third count that they manufactured manure from fish and permitted the "liquids and materials" so to flow,—it was held on demurrer to the declaration—

1. That the first and second counts were sufficient, under the act of 1868, without an allegation that the refuse was deleterious to fish, the statute assuming it to be so, and forbidding the discharging of it in terms.

2. That it was very doubtful whether the third count could be held good under the act of 1872, although framed in the precise words of the act, since there may be "liquids and materials used and produced" in such business that are harmless and the discharge of which the statute could not be regarded as intended to prohibit.

3. That the act of 1872 intended to give the whole penalty to the person prosecuting.

4. That the statutes were not unconstitutional as imposing a penalty for carrying on in the ordinary mode a lawful and harmless business, the acts prohibited being presumptively harmful.

5. That the court ought not to declare a statute void under the constitutional prohibition of "excessive fines" unless in a very clear case, and that it could not regard the fine imposed by these acts as so clearly excessive as to warrant such a decision.

The declaration contained three distinct statements of the facts constituting the causes of action, and closed with the following single averment : "Whereby, and by force of said statutes, the defendants have forfeited, and an action hath accrued to the plaintiff to recover, one hundred dollars." Held, on special demurrer—1. That the declaration was to be regarded as containing three counts. 2. That that averment was to be treated as applicable to all the counts. 3. That the defect, if any, was cured by the statute (Gen. Statutes, tit. 1, sec. 90,) which provides that no writ or other pleading shall be abated for any kind of circumstantial defect if the person and cause may be rightly understood by the court.

The three counts were averred to be for the same cause of action. Held that, as it was no objection that the counts were in fact for the same cause of action, an averment that they were so, instead of the usual fiction in such cases, ought not to injure the declaration.

Each of the three counts concluded "contrary to said statutes." Held that such conclusion was proper as the action was founded upon the two statutes taken together, but that, if not strictly proper, yet as it appeared from other parts of the declaration that the action was founded upon statute and not common law, the averment was to be regarded as merely formal, if not unnecessary.

Held also that an omission to join issue on the demurrer, the parties having proceeded with the hearing of the case without objection, did not render the judgment erroneous. In such a case, as no other joinder could have been made, the court would treat it as made.

---

Blydenburgh *v.* Miles.

---

And if regarded as a defect, the statute (Gen. Statutes, tit. 1, sec. 90,) would cure it.

An individual who brings an action on a statute for a penalty is entitled to costs under the general statute giving costs to parties in civil proceedings.

ACTION on the statutes of 1868 and 1872 " for encouraging and regulating fisheries," brought to the city court of the city of New Haven.

The statute of 1868 is as follows :—" Every person, partnership or corporation that shall permit or allow any coal tar, or refuse from the manufacture of gas, or refuse from establishments operated to extract oil from white-fish, or other deleterious substances to clams, oysters, eels and fish, to run, flow, drain or be placed in any of the harbors, rivers, creeks, arms of the sea, or waters adjacent to this state, shall forfeit the sum of one hundred dollars, one half to him who shall prosecute to effect, and one half to the treasury of the town within which the offense is committed."

The act of 1872 is as follows :—" The provisions of the act approved July 17th, 1868, and entitled ' an act in addition to an act for encouraging and regulating fisheries,' shall apply to any person, persons, or corporation carrying on the business of manufacturing oil or manure from fish or from bones or the carcasses of animals, or of manufacturing mineral phosphates or artificial manures ; and it shall be deemed a violation of said act to permit or allow any of the liquids or materials used or produced in said establishments or businesses, to run, flow, or drain into or be placed in any of the harbors, rivers, creeks, arms of the sea, or waters adjacent to this state ; and the forfeiture or penalty provided by said act may be recovered for each and every day that said act is violated ; and any person may sue for, in his own name, and collect said forfeiture or penalty in a proper action on this statute."

The material parts of the writ and declaration were as follows :—" Then and there to answer unto Levi N. Blydenburgh, of said city of New Haven, in an action brought on a certain statute law of this state, entitled ' an act in addition

to an act for encouraging and regulating fisheries,' passed in the year 1868, and upon a certain statute law of this state in addition thereto, entitled, ' an act in addition to an act entitled an act in addition to an act for encouraging and regulating fisheries,' passed in the year 1872 ; whereupon the plaintiff declares and says that, on the 10th day of August, A. D. 1872, the defendants, on Charles Island, so called, in the town of Milford, and county of New Haven, carried on, and for a long time prior thereto had carried on, and still do carry on, in an establishment operated to extract oil from white-fish and for other purposes, the business of manufacturing oil and manure from fish, and of manufacturing artificial manure. And the plaintiff says that on the said 10th day of August, the defendants did, at said Charles Island, permit and allow the liquids and materials used and produced in said establishment and business, and the refuse from said establishment, to run, flow, drain, and be placed in the waters adjacent to this state, and in a certain harbor or arm of the sea known as Milford Harbor, contrary to said statutes.

" And the plaintiff further declares and says, for the same cause of action as in the first count contained, that the defendants, on the 10th day of August, A. D. 1872, on Charles Island, so called, in said town of Milford, were carrying on, and for a long time prior thereto had carried on, and do still carry on, in an establishment operated by them to extract oil from white-fish, the business of manufacturing oil from fish ; and the plaintiff says that the defendants did, at said Charles Island, on said 10th day of August, permit and allow the liquids used and produced in said establishment and business, and the refuse from said establishment, to run, flow, drain into and be placed in the waters adjacent to this state, and in a certain harbor or arm of the sea known as Milford Harbor, contrary to said statutes.

" And the plaintiff further declares and says, for the same cause of action as in the two preceding counts contained, that the defendants, on the 10th day of August, A. D. 1872, on Charles Island, so called, in said town of Milford, were car-

rying on the business of manufacturing manure from fish, and of manufacturing artificial manures ; and the plaintiff says that the defendants did on said 10th day of August, at said Charles Island, permit and allow the liquids and materials used and produced in said business, to run, flow, drain into and be placed in the waters adjacent to this state, and in a certain harbor or arm of the sea known as Milford Harbor, contrary to said statutes.

" Whereby and by force of said statutes, the defendants have forfeited, and an action hath accrued to the plaintiff to recover of the defendants, a large sum, to wit, one hundred dollars, to recover which this action is brought."

The defendants demurred to the declaration both generally and specially, assigning as special causes of demurrer, firstly, that the town of Milford was not joined as a plaintiff or mentioned as a party for whose benefit as well as for himself the plaintiff sued ; and secondly, that the declaration was double in that three several acts of the defendants were set forth as the grounds for recovering a single forfeiture of one hundred dollars. The case was heard and decided without any joinder of issue upon the record.

The court (*Harrison, J.*) overruled the demurrer and rendered judgment for the plaintiff to recover $100 and costs. The defendants brought the record before this court by a motion in error. The errors assigned sufficiently appear from the argument of the defendants' counsel, and from the opinion of the court.

*Baldwin,* for the plaintiffs in error.

1. The declaration in this case is substantially defective in not alleging that the liquids, materials and refuse, allowed to flow, drain, or be placed in the water, were of a character deleterious to fish.

The declared and only purpose of the act of 1868 was to encourage fisheries. Its mode of encouragement was to give a *qui tam* action against any one allowing coal tar, refuse from gas and fish oil factories, or *other deleterious substances*

to clams, oysters, eels, and fish, to run or be placed in any tide waters. To put substances not deleterious to fish into the water cannot discourage fisheries, or constitute an offense. *Elias* v. *Nightingale*, 8 El. & Blackb., 698.

The act of 1872 declares that the act of 1868 shall apply to any manufacturers of oil or manure from fish, bones, or carcasses, or of mineral phosphates, or of artificial manures ; and that " it shall be deemed a violation of said act " to allow any of the liquids or materials used or produced in said establishments to run or be placed in any tide waters, &c. As the purpose of this act, like the other, is declared to be the encouragement of fisheries, it is obvious that the *spirit* of the act is not violated if the manufacturers embraced in its terms allow such liquids or materials as may be used in their establishments, but are not deleterious to fish, to flow into the sea. A contrary construction would render them liable to the penalty for allowing a pitcher of drinking water to be emptied out of the window, in order that it might be re-filled with fresh water.

Now, that a statute is to be construed according to its spirit, rather than its letter, is familiar law. Bac. Abr., *Statute*, I, 45 ; *Clark* v. *Hoskins*, 6 Conn., 109. And especially must these rules be applied to a penal statute. *Daggett* v. *State*, 4 Conn., 63 ; 1 Bish. im. Procedure, §§ 369 —372 ; *Elias* v. *Nightingale*, 8 El. α Blackb., 698. To the general rule that a statutory offence may be charged in the words of the statute, there is, therefore, a recognized exception in cases " where the words of the statute may, by their generality, embrace cases falling within its literal terms, which are not within its meaning and spirit." *State* v. *Bierce*, 27 Conn., 320.

2. If the literal construction contended for by the plaintiffs in error were admissible, it would render the statutes unconstitutional.

The business of manufacturing gas is a lawful business. *Norwich Gas Light Co.* v. *Norwich City Gas Co.*, 25 Conn., 35. And so is that of manufacturing oil and artificial manures from fish. It is recognized as lawful by these statutes,

for they only assume to prevent it from being conducted improperly. To prohibit the flow from any factory into the sea of substances deleterious to fish, is undoubtedly within the powers of internal police possessed by the state ; but to single out some particular lawful business and declare that its further prosecution in the ordinary way shall be " deemed to be " a nuisance, whether it is one in fact or not, is not within the powers of the legislature of a free government. Cooley on Const. Limitations, 354, 390, 392. *Yates* v. *Milwaukee*, 10 Wall., 497, 505. To deny owners of fish-oil factories the right to let liquids, &c., used in them, and not deleterious to fish or men, flow into the sea, on which such factories would naturally be placed, is to abridge their privileges, to deprive them of the enjoyment of their property without due process of law, and to deny them the equal protection of the laws. *Live Stock Dealers' Association* v. *Crescent City Live Stock Co.*, 5 Am. Law Rev., 171 ; *Wynehamer* v. *People*, 3 Kern., 378, 432.

3. If the statutes were otherwise constitutional, the penalty would not be recoverable, because it is an " excessive fine." Constitution, Art. 1, Sec. 13. A hundred dollars a day for permitting the acts forbidden is excessive, whether measured by the injury that can be done to fish, or by the impropriety of the acts. Nor does calling it a " penalty " make it less a " fine." *Hanscomb* v. *Russell*, 11 Gray, 373. A comparison of its amount with that of the penalties imposed for committing nuisances, in the ordinary course of our legislation, will show that it far exceeds what the settled policy of the state has established as a sufficient sanction in other cases. Gen. Statutes, tit. *Nuisances*, pages 603 to 605.

4. As to the formal defects of the declaration :

*a.* The declaration is either double, or bad for a misjoinder of counts. It contains three so-called counts, each professedly for the same cause of action. By the rules of pleading there can be no joinder of counts for the same cause of action. In practice it may be done, but only by alleging that they are for different causes of action. 1 Chitty Pl., 227, 373 ;

Gould Pl., ch. 4, § 3.   Here there is not only no such alle-
gation, but it is alleged that they are for the same cause of
action.   This is only permissible by statute, in joining tres-
pass and case.   The declaration is therefore bad on general
demurrer.   But if the declaration is regarded as containing
but one count, it is plainly double.   Gould Pl., ch. 4, §§ 99,
100 ; id., ch. 8, § 1.   Three distinct acts or series of acts
are alleged, by any one of which the penalty would be incur-
red.   Had we pleaded to the merits, we should have had to
answer each of these dis⁺inct charges.   *Holly* v. *Brown*, 14
Conn., 255.

*b.* The plaintiff sues in his own name, without joining the
town, claiming the right to do so under the final clause of
the first section of the act of 1872, which provides that " any
person may sue for, in his own name, and collect said for-
feiture or penalty, in a proper action *on this statute.*"   To
justify this claim, he should have concluded his count or
counts, *contrary to the statute last above pleaded,* (that of
1872.)   The conclusion *contrary to both statutes* is a fatal de-
fect.   *Andrews* v. *Hundred of Lewknor,* Cro. Jac., 187 ;)
*S. C.*, Yelv., 116 ; 2 Saund. Pl. & Ev., 831.   *Griswold* v.
*Gallup,* 22 Conn., 212.

*c.* If, on the other hand, his action be founded on both
statutes, as he has alleged in his declaration, then, construing
both together, the town is entitled to half the penalty, and
should have been either joined as a co-plaintiff or referred to
as one *qui tam,* &c.   There is nothing in the second act
necessarily inconsistent with the provision of the first, that
the town shall have half of whatever the informer may col-
lect.   If, therefore, the second act is to be construed as au-
thorizing him to sue, without joining the town as a co-plain-
tiff, he ought at least to allege its interest in the forfeiture, so
that the judgment may direct as to the disposition of its
moiety.   *Dickinson* v. *Potter,* 4 Day, 340 ; *Bradley* v. *Bald-
win,* 5 Conn., 290.

*d.* Taking this horn of the dilemma, also, the second count
should have concluded contrary to the act of 1868 only,
and the third contrary to that of 1872 only.

*e.* If there are here three separate counts, then the first and second are demurrable for want of anything to show a cause of action in favor of the plaintiff. A plaintiff's title must appear in every count, without aid from the writ, or from any other count not expressly referred to ; and although when he sues for *damages* there need be but one *ad damnum* clause, where he sues as a common informer, relying on some statute whereby an action has accrued to him, he must say so in connection with every separate specification of his cause of action.

5.   As to the formal defects in the judgment :

*a.* The judgment is erroneous because no issue was formed or decided. This was a defect that might properly have been amended by order of the court during the term, and before allowing a motion in error ; but which, not having been thus amended, leaves the judgment without any " cause " to support it. *Gates* v. *Nobles,* 1 Root, 344. The plaintiff's omission to join issue was a discontinuance of the action, after which any further proceedings were *coram non judice.* Gould Pl., ch. 9, § 33.

*b.* The judgment is erroneous because it includes costs. Costs were not recoverable at common law, but only by the statute of Gloucester, 6 Edw. 1, which gave them wherever the party recovers *damages.* A common informer suffers no damages, and recovers none ; it is therefore well settled that he can recover no costs. Buller N. P., 333 ; 2 Sellon Prac., 428 ; 1 Bac. Abr., 43 ; Potter's Dwarris on Stat., 254.

*Doolittle,* for the defendant in error.

CARPENTER, J.   This action is brought on the statutes of 1868 and 1872, which are sufficiently set out in the statement of the case. There are three counts in the declaration. The first alleges that the defendants were carrying on, in an establishment operated to extract oil from white-fish, and other purposes, the business of manufacturing oil and manure from fish, and of manufacturing artificial manures; and that they permitted and allowed the liquids and materials used

and produced in, said establishment and business, and the refuse from said establishment, to run, flow, &c., into Milford Harbor. The second count is substantially like the first, except that it describes the business carried on by the defendants as the manufacturing of oil from white-fish. The third count will be noticed hereafter.

The defendants demurred generally and specially. The court below overruled the demurrer and rendered judgment for the plaintiff. The cause is brought before this court by a motion in error.

1. It is claimed that the declaration is defective in substance in not alleging that the refuse, which was permitted to drain into the sea, was deleterious to fish. As we interpret the statute it forbids, without qualification, the flowage or drainage of refuse materials from the kinds of business mentioned, into the waters adjacent to this state. It assumes that such substances are destructive, or at least harmful, to fish, and they must be so regarded until the contrary appears. We may concede that the word " refuse " is somewhat vague, and that there may be some practical difficulty in determining, in some cases, precisely what was intended by it; but for the purposes of this case the presumption is that it has a sufficiently definite meaning to all persons who are familiar with the details of the business to which it relates. If in any case the question shall arise whether the material is refuse, within the meaning of the statute, it will be for the court, or jury, as the case may be, to determine it in the light of all the facts. It may happen that the substance in question will be found to be deleterious to fish, and yet not, strictly speaking, refuse. In that case another clause of the statute will apply, which prohibits " other deleterious substances to clams, oysters, &c."

We think, therefore that the first two counts, in alleging the flow of refuse, are sufficient in substance.

In the third count the business carried on by the defendants is alleged to be " the manufacturing manure from fish and the manufacturing of artificial manures "; but the act complained of is that the defendants did " permit and allow

the liquids and materials used and produced in said business to run, flow, &c." The statute of 1872 expressly provides that " it shall be a violation of said act " (the act of 1868,) ' to permit or allow any of the liquids or materials used or produced in said establishments or businesses to run, flow, &c." It must be confessed that this is a specimen of loose legislation. Although this count is framed in the language of the statute, yet being a penal statute, it is very doubtful whether we can, consistently with the rules of law and the principles of justice, give to it the effect contended for by the plaintiff. It is possible, at least, that liquids and materials may be used in this kind of business which are perfectly harmless. We cannot believe that the legislature intended to subject a party to a heavy penalty for permitting such materials to flow into the sea. But as it is unnecessary in this case to determine what effect may be given to this part of the statute, we forbear to discuss the subject further.

2. It is claimed that the declaration is bad for duplicity, or for a misjoinder of counts. We think it was the manifest intention of the pleader to frame his declaration in three counts, and we shall so regard it. The principal objection to this is, that the first and second counts do not conclude with the allegation, " whereby and by force of said statute, &c." But we are inclined to treat that allegation at the close of the third count as applicable alike to each of the other two. Viewed in that light the omission, if a defect at all, is a mere circumstantial defect, and is cured by statute, Gen. Statutes, p. 19, sec. 90. The objection therefore that there is but one count in the declaration, and that that is bad for duplicity, is not well founded.

Is there a misjoinder of counts? We think not. "Misjoinder of causes of action, or counts, consists in joining, in different counts in one declaration, several different demands, which the law does not permit to be joined, to enforce several distinct, substantive rights of recovery." As where a declaration joins a count in trespass with another in case, for distinct wrongs, or one count in tort with another in contract." Gould's Pl., ch. 4, sec. 98. Here there is but one

demand, one right of recovery. There is no unnecessary repetition of the facts out of which his cause of action arises, for the matter in each count is materially different from the matter in each of the other counts. The different counts are but different modes of stating the same cause of action, which is clearly allowable. It is true that it is usually averred that each count is for a different cause of action, but every lawyer knows that that averment does not mean what it says. The truth is directly the reverse, and it is so understood. The pleader in this case boldly omitted it; not only so, but he averred affirmatively in each of the second and third counts that the cause of action therein stated was the same as in the preceding count or counts. In this way the declaration is stripped of all fiction and the simple truth is stated; but the meaning is the same as in the usual form. Had these averments been omitted this objection would have been without foundation. Their only effect is to make it appear upon the face of the declaration that the plaintiff will offer proof only of one transaction, and claim to recover only one penalty. We are asked then to hold the declaration bad for the reason that the plaintiff therein stated a truth in lieu of a falsehood, and thereby told the defendants what they had a right to. know at or before the opening of the trial. Some elementary authorities seem to sanction this claim; but the defendants cite no adjudged case in its support, and we are confident that no well considered modern case can be found that goes that length.

3. It is next objected that the town of Milford should have been joined as a plaintiff, or mentioned as one for whose benefit the suit was brought. We do not think this was necessary. The first statute gives one half the penalty to him who shall sue therefor, and the other half to the town. The latter provides that " any person may sue for in his own name, and collect, said forfeiture or penalty." We see no evidence in this that the legislature intended that the town should be joined as a plaintiff, or should be entitled to one half the penalty. If such had been their intention we can perceive no object in the change. It is obvious that the

intention was to give the entire penalty to him who should sue for and collect the same.

This being so, it is further objected that the conclusion of each count, " contrary to said statutes," is wrong ; that it should have concluded contrary to the statute of 1872. The object of the averment, " contrary to the form of the statute," is to show that the action is brought upon the statute, and that it is not an action at common law. If that otherwise appears upon the face of the declaration this averment is unnecessary, or is at least a mere formal averment. We think it sufficiently appears, aside from the conclusion, that the action is brought upon these statutes. Both are essential to the maintenance of the action in its present form. The provisions of the first relate to the business of manufacturing oil from white-fish ; the second extends those provisions to the business of manufacturing artificial manure. The pleader being in doubt whether the injury proceeded from the one, or the other, or from both, framed his declaration so as to meet the proof as it might appear upon the trial. He in the first instance refers to the statutes, and concludes each count " contrary to said statutes." In this we see nothing objectionable.

4. The defendants also claim that the judgment is erroneous for the reason that the plaintiff omitted to join in the issue tendered by the demurrer. For the purpose of this question it is agreed that the issue was not in fact joined until after judgment, and after the court had adjourned. Our practice in respect to pleading is liberal, perhaps too much so. If no plea is entered, and parties go to trial upon the merits, it is always considered as standing upon the general issue. If a special plea is pleaded, and no replication, it is regarded as traversed. And so if a demurrer is tendered, as the other party can only join in the demurrer, that will be considered as done, whenever the parties proceed with the cause without objection. This rule will work no injustice, as it is in the power of the parties at all times to compel the closing of the issue. They may not omit to do that, and take the chances of a favorable judgment, and, if

Blydenburgh v. Miles.

unsuccessful, reverse the judgment for a circumstantial defect of this character. The statute cited above, Gen. Statutes, p. 19, sec. 90, is applicable to this part of the case also.

The judgment for cost is authorized by Gen. Statutes, tit. 53, sec. 7.

5. Finally, it is objected that the statutes on which this action is brought are unconstitutional. This objection is two fold. First, that it is not competent for the legislature to impose a penalty for carrying on a harmless business. It is conceded that they may prohibit the flow into the sea of any substance deleterious to fish. Presumptively the refuse from these manufactories is deleterious to fish. Until the contrary appears we cannot declare the law to be unconstitutional on that ground. Secondly, that the fine is excessive. We should be very reluctant to say that the legislature had exceeded its powers in imposing excessive penalties, and ought not to do so except in a very clear case. It is true the penalty in this statute seems to be a severe one, but whether it is excessive or not must depend materially upon the circumstances and the nature of the act for which it is imposed. We are not familiar with the business carried on by these defendants. The amount of capital invested, the amount of profits realized, and the magnitude of the evil sought to be remedied, are all to be considered in determining this question. In looking at this record we are unable to say that the penalty is so disproportioned to the offense as to justify us in holding the law to be void. If experience shall prove that the severity of the law leads to oppression and injustice, the legislature can easily supply a remedy. At present the presumption is that the penalty is not an unreasonable one. If not, the defendants must choose between conforming to the law and taking the consequences of its violation.

For these reasons we think there is no error in the judgment.

In this opinion the other judges concurred.